# IN THE COURT OF APPEALS OF IOWA

No. 16-0467
Filed March 22, 2017

IN RE THE MARRIAGE OF HEATHER LYNN KENNE
AND DANIEL JOSEPH KENNE

Upon the Petition of
HEATHER LYNN KENNE,
      Petitioner-Appellee/Cross-Appellant,

And Concerning
DANIEL JOSEPH KENNE,
      Respondent-Appellant/Cross-Appellee.
_____

      Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell,

Judge.


      Daniel Joseph Kenne appeals, and Heather Lynn Kene cross-appeals,

various economic provisions of the decree dissolving their marriage.  **AFFIRMED**

**ON BOTH APPEALS.**


      Michael B. Oliver of Oliver Gravett Law Firm, P.C., Windsor Heights, for

appellant/cross-appellee.

      Shayla L. McCormally and Jennifer H. DeKock of Wandro & Associates,

P.C., Des Moines, for appellee/cross-appellant.


      Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Daniel Joseph Kenne appeals various economic provisions of the decree dissolving his marriage to Heather Lynn Kenne. Heather cross-appeals. We affirm.

### I.     Background Facts and Proceedings

Daniel and Heather were married in 1990. After approximately twenty-five years of marriage, Heather filed a petition for dissolution of marriage in 2015. The parties have three children together, one of whom was a minor during the pendency of this action. Both parties worked during the marriage.[1] Both parties are in good health, and neither party has much or any education past high school. The district court accepted $44,000 as Heather's income—the amount used by the parties on the child support guidelines worksheet—accounting for both her full-time job and the part-time job she intended to continue working, although Daniel argues this does not fully account for the tips Heather received from her part-time position. The district court accepted $77,000 as Daniel's income—the amount used by the parties on the child support guidelines worksheet—which reflects Daniel's base annual salary but not his monthly car allowance of $525.[2] Heather argues Daniel's gross income was nearly $94,000 in 2015 and Daniel expects to earn $90,000 in 2016.

The parties had virtually no assets at the time of the dissolution. They acknowledge they spend a considerable portion of their income on their minor

---

[1] Heather states that, though she worked during the marriage, for a number of years she earned money for the family by providing childcare for others while staying home with the parties' children.
[2] While it is also possible for Daniel to receive a bonus, the district court found no history of a bonus being paid and determined there was no reason to project a bonus.

child's hockey activities.[3] The record indicates the parties intend to continue their child's involvement in hockey; therefore, these costs will be ongoing. Following their separation, Heather has been renting a one-bedroom flat for $625 per month. Daniel has been renting a three-bedroom house for $1000 per month. One of the parties' adult children lives with Daniel and pays $200 per month toward bills. Daniel testified health insurance would cost him $650 per month; Heather testified the cost of health insurance for herself and the minor child costs her $333 per month.

Prior to trial, the parties mediated and resolved all matters arising from the dissolution except for Heather's request for alimony and payment of attorney fees. Following trial, the district court entered a decree awarding Heather $975 in alimony to be paid monthly until April 1, 2023, and $575 per month thereafter. The district court also awarded Heather $2500 in attorney fees. The parties appealed.

## II. Standard and Scope of Review

We review cases tried in equity, such as dissolution cases, de novo. Iowa R. App. P. 6.907; *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). Prior cases, though helpful, have little precedential value

---

[3] This financial commitment is so considerable that Heather has worked multiple jobs at a time to help cover these expenses. Despite doing so, she was unable to make payments on a car she was awarded as part of the mediation—she indicates she was unable to make the payments because Daniel was late in making his first few child-support payments. The car was repossessed, which impacted both parties' credit ratings and subjected them to potential collection actions. Heather states she agreed to pay the deficiency on the car pursuant to the parties' agreement.

because we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). We accord the trial court considerable latitude in making factual determinations and will disturb the ruling only when there has been a failure to do equity. *Gust*, 858 N.W.2d at 406.

### III. Analysis

Daniel challenges two economic provisions of the dissolution decree: (1) the award of alimony to Heather and (2) the award of approximately half of Heather's attorney fees to be paid by Daniel. Heather contends the district court failed to properly calculate Daniel's total income in determining the appropriate alimony award and requests appellate attorney fees.

### A. Alimony

In awarding alimony, a court considers the factors set forth in Iowa Code section 598.21A (2015). *See In re Marriage of Applegate*, 567 N.W.2d 671, 673 (Iowa Ct. App. 1997). The length of the marriage, here twenty-five years, weighs in favor of a grant of traditional spousal support. *See* Iowa Code § 598.21A(1)(a); *see also Gust*, 858 N.W.2d at 410-11 ("[O]ur caselaw demonstrates that duration of the marriage is an important factor for an award of traditional spousal support. . . . Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support."). The parties are both healthy, *see* Iowa Code § 598.21A(1)(b), there were no assets for the parties to distribute, *see id.* § 598.21A(1)(c), and the parties have generally comparable education, *see id.* § 598.21A(1)(d). Throughout the marriage, Daniel has been the primary income

earner, often earning far in excess of Heather, even when Heather worked multiple jobs at a time. *See id.* § 598.21A(1)(e). There is no indication Heather has a higher earning capacity. *See id.* § 598.21A(1)(f).

We agree with the district court that Heather's income from her full-time job and the part-time job she intends to continue approximates $44,000. The record reflects Daniel has an annual salary of $77,000.[4] However, Daniel also receives a car allowance of $525 per month or $6300 per year. The parties agreed Daniel would pay $350 per month in child support, which reduces his disposable income by approximately $4200 a year. The district court's spousal-support award of $975 per month reduces his disposable income by another $11,700 per year. This leaves Daniel with an approximate $67,400 and Heather with an approximate $59,900.[5] The spousal-support award is meant to maintain for Heather "a standard of living reasonably comparable to that enjoyed during the marriage." *Gust*, 858 N.W.2d at 411 (citation omitted). In this case, that standard of living means continuing the minor child's involvement in hockey—an activity that demands much of the parties' time and resources. Cognizant of this reality, the district court set Daniel's support obligations to Heather to be reduced in 2023 when the child reaches majority and Heather is no longer providing the same support for the child's hockey activities. Having reviewed the statutory factors and the facts of this case, we conclude the district court did not fail to

---

[4] Although Heather claims Daniel's expected income is greater than that found by the court, we determine the court made an equitable finding as to his current income, without regard to speculative bonuses.

[5] Even without considering the $6300 car allowance received by Daniel, Daniel is left with $61,100 and Heather with $59,900 using the support amounts awarded until 2023. These figures do not account for income tax consequences.

reach an equitable result on the support amount, so we will not disturb that ruling. *See id.* at 406.

Daniel also challenges the duration of the award. The decree awards Heather spousal support "until the death of either party or until Heather remarries." Daniel requests that the award last only until the minor child reaches majority, terminate if the minor child no longer partakes in hockey, or end when Heather is capable of self-support. *See id.* at 412 ("With respect to duration, we have observed that an award of traditional spousal support is normally payable until the death of either party, the payee's remarriage, or until the dependent is capable of self-support at the lifestyle to which the party was accustomed during the marriage."). First, there is no indication Heather will be able to increase her earning capability, earn the amount Daniel earns, or earn an amount that will provide Heather the standard of living she was accustomed to during the marriage. *Id.* ("In order to limit or end traditional support, the evidence must establish that the payee spouse has the capacity to close the gap between income and need or show that it is fair to require him or her alone to bear the remaining gap between income and reasonable needs. Spousal support may end, however, where the record shows that a payee spouse has or will at some point reach a position where self-support at a standard of living comparable to that enjoyed in the marriage is attainable." (citations omitted)). Further, the district court already took into account the minor child's involvement in hockey by providing for a downward adjustment in the spousal-support award when the child reaches majority. Again, upon our review, we do not find that an adjustment of the district court's award is warranted.

### B.     Attorney Fees

"An award of attorney fees lies within the discretion of the trial court." *Applegate*, 567 N.W.2d at 675.   Thus, to overturn the district court's decision, Daniel must show the district court abused its discretion.  *Id.*  Daniel argues that, because the parties have no assets, the district court abused its discretion in awarding attorney fees.   The district court made its award based upon Daniel's "relatively better financial standing."   *See id.* ("Whether attorney fees should be awarded depends on the respective abilities of the parties to pay the fees and the fees must be fair and reasonable.").   We cannot find it abused its discretion in doing so; accordingly, we affirm.

### C.     Appellate Attorney Fees

Heather requests appellate attorney fees.  "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion."  *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).   "[I]n determining whether to award attorney fees," we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."   *Id.* (citation omitted).   Having considered these factors, we decline Heather's request for attorney fees on appeal.

**AFFIRMED ON BOTH APPEALS.**